# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | 1:07CR317-1 |
| ERVIN CALVIN CRAWFORD | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Ervin Calvin Crawford's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) in Light of the First Step Act, ("Compassionate Release Mot." or "C.R. Mot.") [Doc. #76], and Motion for Placement in Home Detention Pursuant to § 231(g) of The Second Chance Reauthorization Act of 2018 (34 U.S.C. § 60541(g)), [1] ("Home Detention Mot." or "H.D. Mot.") [Doc. #78], both of which the Government opposes, (see Government's Response to Defendant's Motion ("Gov't Resp.") [Doc. #84]). For the reasons explained below, Crawford's Motions are denied.

I.

Crawford is currently serving a 210-month term of imprisonment as a result of a 2007 conviction for possession with intent to distribute heroin and possession of a firearm by a felon. (See J. [Doc. #24].) Crawford argues that (1) his age and medical conditions warrant compassionate release, (see C.R. Mot.), and (2) his age in addition to time served warrant release onto home detention, (see H.D. Mot.).

---

[1] The Clerk's office docketed Crawford's Home Detention Motion as a supplement to Crawford's Compassionate Release Motion. However, here it is addressed as a separate motion.

In support of his Motions, Crawford submitted his March 13, 2019 request to the warden for compassionate release, his March 13, 2019 request to the warden for home detention, his individualized reentry plan, his Bureau of Prisons ("BOP") 2018 medical records, photographs of his family, and work product from his time while incarcerated at the BOP. (See [Docs. #76, 78].)

In response, the Government submitted a declaration by Carlos J. Martinez, supervisory attorney at Consolidated Legal Center in Lexington, Kentucky, where Crawford is presently incarcerated, and who has access to Crawford's medical records and is familiar with his condition. (Gov't Resp. Attach. 1. [Doc #84-1].) Martinez's declaration included (1) the BOP's March 29, 2019 response to Crawford's February 14, 2019 request, (2) a medical assessment by Myriam Melendez Rosa, M.D., clinical director at Federal Medical Center in Lexington, Kentucky, and (3) Crawford's inmate profile. (Id. Attach. 2-4. [Doc #84-2-4].) The Government also submitted Crawford's February 14, 2019 request to the warden for compassionate release. (Id. Attach. 3. [Doc #84-4].)

II.

A.

Crawford submitted his BOP medical records from 2018 revealing ten clinical encounters, eight of which were office visits and two were medication renewals. (See C.R. Mot. Attach. 1 [Doc. #76-1] at 2-13.) Crawford's medical records reveal that he has Hepatitis C, Hypertension, Esophageal Reflux, Urinary Tract Infection, Osteoarthrosis, hip pain, backache, and an enlarged prostate. (Id. at 13.)

He has been prescribed numerous medications, including aspirin, atorvastatin, finasteride, hydrochlorothiazide, and hydrocortisone to treat his medical conditions. (Id.)

On January 5, 2018,[2] Crawford presented complaining of "osteoarthritis of knee" and was prescribed naproxen. (Id. at 12.) On February 5, 2018,[3] he was seen at urology, which noted that he was "last seen by Urologist on March 2017 and recommended cystoscopy with biopsy and DVIU." (Id. at 11.) A cystoscopy with biopsy and DVIU was recommended for the second time. (Id.) On March 29, 2018,[4] Crawford's medications — aspirin for hypertension, hydro-chlorothiazide for hypertension, and ranitidine for esophageal reflux — were renewed. (Id. at 10.)

On April 03, 2018,[5] Crawford was "brought to medical for injury assessment, inmate stated he fell on the floor at his cell was watching tv through the window, inmate alert x 3 able to state name, hometown, location, no headache, no nausea or vomiting, no muscle weakness, inmate walks with a cane. No skin wounds or laceration or abrasion. No injury or trauma found." (Id. at 9.) A concern with Crawford's low blood pressure was noted, and his blood pressure

---

[2] Crawford submitted page two of two pages from his medical encounter on January 5, 2018.
[3] Crawford submitted page one of two pages from his medical encounter on February 5, 2018.
[4] Crawford submitted page one of one page from his medical encounter on March 29, 2018.
[5] Crawford submitted page two of three pages from his medical encounter on April 3, 2018.

was to be checked the next day. (Id.)  Otherwise, there was "no significant findings/no apparent distress." (Id.)

On May 4, 2018,[6] Crawford presented for an "[e]valuation encounter" with the "chief complaint" of "urinary problem." (Id. at 5.)  A notation was made that Crawford was "being seen after having a cystoscopy yesterday, he returned to FCI Edgefield with a catheter placed. He denies pain, denies any problems urinating. Complains that when he walks the catheter is pulled by his pants, making it uncomfortable. Reports he has not had a bowel movement since returning, but he has had 3 attempts." (Id.)

On November 9, 2018,[7] an Inmate Intra-system Transfer report was generated for a transfer date on November 16, 2018. (Id. at 13.)  The report indicated that Crawford presented for an "[e]ncounter for general adult medical exam without abnormal findings." (Id.)  His medications were listed, including aspirin, atorvastatin for cholesterol, finasteride, hydrochlorothiazide for blood pressure, and hydrocortisone acetate as a rectal suppository. (Id.)  On November 14, 2018,[8] he visited the "urgent care room" after complaining of dizziness. (Id. at 8.)

---

[6] Crawford submitted page one of two pages from his medical encounter on May 04, 2018.
[7] Crawford submitted page one of three pages from his medical encounter on November 9, 2018.
[8] Crawford submitted page one of four pages from his medical encounter on November 14, 2018.

4

On December 10, 2018,[9] Crawford presented for a "14 Day Physician Evaluation encounter performed at Health Services" with prostate problems and explained that he underwent a prostate surgery in May 2018. (Id. at 7.) Crawford relayed a new complaint of "seeing spots during the last two months." (Id.) A notation was made that an "optometrist evaluation" would be requested accompanied with continued monitoring. (Id.) Crawford also complained "of chronic pain, due to DDD without treatment. Due to past Hepatitis C Cymbalta discussed and he agreed to use it and get laboratories to monitor liver function." (Id.)

On December 11, 2018,[10] Crawford presented for a Hepatitis Clinic encounter during which clinicians were "unclear on when patient has had reported treatment." (Id. at 6.) On December 28, 2018,[11] clinicians scheduled for January 9, 2019 new laboratory requests for A-Alpha-1-Antitryspin; S-Smooth Muscle Antibody; C-Calprotectin, fecal; F-Ferritin; H-Hep C Ab; I-Iron & TIBC; Hep A Total; and A-Antinuclear antibody for Crawford. (Id. at 3-4.)

---

[9] Crawford submitted page one of eight pages from his medical encounter on December 10, 2018.
[10] Crawford submitted page one of one page from his medical encounter on December 11, 2018.
[11] Crawford submitted page one of one page from his medical encounter on December 28, 2018.

B.

On February 14, 2019, Crawford submitted to Warden Quintina[12] ("Warden") a request, arguing that his "case presents extraordinary and compelling reasons" warranting compassionate release. (Gov't Resp. Attach. 3 at 5-6.) On March 7, 2019, Tyson Baize, Clinical Social Worker, sent Rosa, Clinical Director at Federal Medical Center, an e-mail asking whether Crawford met the criteria of an elderly inmate with medical conditions, criteria which he attached to the e-mail, and noting that Crawford was then sixty-six years old and had served sixty-eight percent (eleven years, eleven months, and twenty-three days) of his 210-months sentence (seventeen years and six months). (Gov't Resp. Attach. 3 at 1-3.) On March 11, 2019, Rosa responded by stating that "[a]fter reviewing [Crawford's] medical record: he does not meet any of the mentioned elderly with medical conditions." (Id.) This was not communicated to Crawford until March 29, 2019.

On March 13, 2019, Crawford submitted a duplicate of his February 14, 2019 request for compassionate release to Warden. (C.R. Mot. Attach. A at 7.) That same day, he also submitted a request to Warden to participate in the "elderly offender home detention program" ("EOHD") arguing that he was sixty-six years old and had "already served far more than two thirds of [his] sentence," and that he would be a "low/min risk" to the community. (H.D. Mot. at 8.) Crawford

---

[12] Crawford addressed his requests to Warden "Quintina", but the Response to Crawford's February 14, 2019 request for compassionate release from the warden is signed as "Francisco Quintana".

6

further argued that home detention was appropriate, because he had not attempted to escape nor escaped from prison; home detention would provide the government with "substantial savings in housing, feeding administrative and medical care"; and he had a "minimal criminal history, non violent offence, no history of violence." (Id.)

On March 25, 2019, Crawford filed the instant Compassionate Release Motion (See generally C.R. Mot.) Crawford states that "[h]e is 66 years old with failing health" and that his "biggest fear is that he might die in prison before June 12, 2022 [estimated release date], as his health is deteriorating." (C.R. Mot. at 5.) He explains that "[c]urrently he walks with a walker as a result of two bad knees, and a slipped disc in his back." (Id. at 4.) He further explains that he suffers from "partial disability in his right hand, and issues related to his digestive system." (Id. at 4-5.) Crawford argues that his "medical issues are a burden to the Federal Bureau of Prisons." (Id. at 5.)

It was not until March 29, 2019 that the warden responded to Crawford's February 14, 2019 request, explaining that "although it appears [Crawford] do[es] satisfy the time served requirement, [he] [did] not meet the medical criterion." (Gov't Resp. Attach. 2.)[13]

---

[13] On May 29, 2019, the Government filed a Motion to Stay Crawford's request for compassionate release pending administrative review by the BOP or until July 23, 2019, whichever was earlier. (See [Doc. #77].) The motion was granted, and, because the record does not reflect a completed administrative review by the BOP and July 23, 2019 has now passed, Crawford's Motion is appropriately before the Court. (Id.)

7

On June 13, 2019, Crawford filed the instant Home Detention Motion, alleging that he meets the statutory requirements of § 231(g)(5) of The Second Chance Reauthorization Act of 2018 as an "elderly offender". (H.D. Mot. at 1.) He argues that the statute grants courts and the BOP the "discretion to release inmates to home confinement as it deems appropriate." (Id. at 2.) He further argues that 18 U.S.C. § 3582 "allow[s] an inmate to petition the Court directly for a reduction in sentence (which EOHD is) after '. . . the lapse of 30 days from the receipt of such a request by the warden . . . '". (Id. at 2.) Crawford contends that he fulfilled the administrative procedures when he submitted his request on March 13, 2019 to the warden, who allegedly failed to respond. (Id. at 4-5.)

### III.

Crawford first requests relief pursuant to the First Step Act's compassionate release provisions. In 2018, Congress passed the First Sept Act, Pub. L. 115-391, 132 Stat. 5194, which, among other things, amended 18 U.S.C. § 3583(c)(1)(A) to permit a defendant, in addition to the Director of the Bureau Prisons, to move for a sentence reduction, provided that he has exhausted his administrative remedies or thirty days have passed without action since his request to the warden for a sentence reduction. The First Step Act provides two avenues of obtaining a sentence reduction. The court must find that "extraordinary and compelling reasons" warrant a reduction or that a defendant "is at least 70 years of age, has served at least 30 years in prison, . . . and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety

8

of any other person or the community . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).  For either avenue, if "a reduction is consistent with applicable policy statements issued by the Sentencing Commission", a court may reduce the term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable". 18 U.S.C. § 3582(c)(1)(A).

A.

First, it must be determined if Crawford "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf" or if there was a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility". See 18 U.S.C. § 3582(c)(1)(A).  Crawford asserts that he has exhausted all administrative remedies.  The Government concedes that Crawford "has arguably met the exhaustion requirements for 18 U.S.C. § 3582(c)(1)(A) . . . ." (Gov't Resp. at 8.)  Crawford submitted his first request for compassionate release to the warden on February 14, 2019 and subsequent requests on March 13, 2019.  Forty-five days lapsed between his February 14, 2019 request and the BOP's March 29, 2019 response.  As such, it is appropriate to address the merits of his Motion.

B.

The Court must next consider whether extraordinary and compelling reasons exist that warrant a reduction in Crawford's sentence. See 18 U.S.C.

9

§ 3582(c)(1)(A)(i).[14] The statute does not define the terms "extraordinary" or "compelling". "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979); see also Smith v. United States, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."). Because the Director of the BOP has been, until the First Step Act, solely authorized to move the Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), the BOP's interpretation of "extraordinary and compelling" reasons is informative. The Bureau of Prison's Program Statement entitled "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582[(c)(1)(A)] and 4205(g)" describes, in relevant part, terminal medical conditions and debilitating medical conditions. (Program Statement 5050.50 (Jan. 17, 2019) § 3.a. (describing policy for diagnosis of "terminal, incurable disease", "prognosis, impact of other serious medical conditions, and degree of functional impairment"), § 3.b. (describing policy for incurable, progressive illness or debilitating injury from which the inmate will not recover, and the inmate's physical confinement and ability to self-care); Program Statement 5050.49 (Aug. 12, 2013) § 3.a. (describing the same), § 3.b. (describing the same).

---

[14] Crawford is not at least seventy years old, so he does not qualify for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(ii).

"Although not dispositive, dictionary definitions are 'valuable tools' for approximating the sense in which a linguistic community uses and understands a word and for confirming that an understanding taken as ordinary is not, in fact, idiosyncratic." Struniak v. Lynch, 159 F. Supp. 3d 643, 653 n.11 (E.D. Va. 2016). Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common". *Extraordinary*, Black's Law Dictionary (11th ed. 2019). Although it does not define "compelling", Black's Law Dictionary defines "compelling need" as one "so great that irreparable harm or injustice would result if it is not met." *Compelling Need*, Black's Law Dictionary.

Also instructive is the United States Sentencing Commission's interpretation of "extraordinary and compelling" circumstances although the relevant sentencing guideline and its commentary apply to § 3582(c)(1)(A) prior to the First Step Act and have not since been amended.[15] United States Sentencing Commission Guidelines' commentary note 1 to § 1B1.13 provides circumstances in which extraordinary and compelling reasons exist. A defendant's medical condition may provide an extraordinary and compelling reason if he "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage

---

[15] See United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *5-6, *8-9 (M.D.N.C. June 28, 2019) (finding extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i), then analyzing the policy statements and noting that, while they were applicable to 18 U.S.C. § 3582(c)(1)(A) prior to the First Step Act, they still "provide useful guidance").

11

organ disease, and advanced dementia." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(i) (2018). The same is true if he is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." Id. § 1B1.13 cmt. n.1(A)(ii) (2018).

     With these interpretations and definitions as guidance, it is apparent that the record does not support a finding that Crawford's medical conditions provide extraordinary and compelling reasons to reduce his sentence. His medical records reveal a variety of ailments, including Hepatitis C, carpal tunnel syndrome, hypertension, esophageal reflux, urinary tract infection, and osteoarthrosis for which he has received extensive treatment, including medical appointments, follow-up appointments, laboratory testing, Hepatitis C treatment, a cystoscopy and catheter placement, treatment following his complaints of dizziness and for a fall, and prescribed medications. However, neither the medical records nor Crawford demonstrate (1) that he suffers from a terminal illness, (2) that any of his illnesses have substantially diminished his ability to care for himself while incarcerated in the BOP, or (3) that the BOP cannot treat his medical conditions. Therefore, Crawford's medical conditions do not constitute extraordinary or compelling reasons warranting a sentence reduction.

Crawford argues that he nevertheless presents extraordinary and compelling reasons, because he is at least sixty-five years old, has served at least ten years of his sentence, and suffers from serious medical conditions, warranting compassionate release. Pursuant to commentary note 1(B) to § 1B1.13 of the United States Sentencing Guidelines, the age of the defendant can be an extraordinary and compelling reason under certain circumstances if he "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."[16] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(B) (2018). Further informative is the BOP's interpretation of "elderly inmates with medical conditions".

The BOP's Program Statement entitled "Compassionate Release/Reduction in Sentence Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)" also describes which inmates may qualify for a sentence reduction based upon age and medical condition. (Program Statement 5050.50 (Jan. 17, 2019) § 4.b.) The criteria include: "(1) [a]ge 65 and older, (2) [s]uffer from chronic or serious medical conditions related to the aging process, (3) [e]xperiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility, (4) [c]onventional treatment promises no substantial

---

[16] See Beck, 2019 WL 2716505, at *5-6, *8-9.

improvement to their mental or physical condition, and (5) [h]ave served at least 50% of their sentence". (Id.)

Crawford satisfies two of the requirements under the United States Sentencing Guidelines and the BOP's Program Statement, as he is sixty-six years old, and as of March 07, 2019, he had served nearly twelve years of his 210-months sentence. However, Crawford has failed to demonstrate that he suffers from serious deterioration in his physical health because of the aging process or, as previously discussed, that his deteriorating physical health substantially diminishes his ability to function in a correctional facility. Further, although Crawford claims that his conditions will burden the BOP, there is no evidence to support that position.

C.

Accordingly, because it is determined that there are no extraordinary and compelling reasons warranting a reduction in Crawford's sentence, see 18 U.S.C. § 3583(c)(1)(A)(i), there is no need to assess the applicable policy statements in United States Sentencing Guidelines § 1B1.13 or the factors set forth in 18 U.S.C. § 3553(a) according to which an initial finding of extraordinary and compelling circumstances would necessarily be further evaluated.

IV.

Crawford also has moved for relief under the First Step Act's EOHD program. He argues that "[a]s an elderly offender, [he] qualif[ies] for release to home detention IMMEDIATELY," and requests an order granting his immediate

release and the application of "945 days of good conduct time due [him] . . . to [his] supervised release requirements." (H.D. Mot. at 1.)

Crawford's argument regarding home detention rests on 34 U.S.C. § 60541(g) as reauthorized and amended by the First Step Act, pursuant to which, under a pilot program, "the Attorney General may release some or all eligible elderly offenders and eligible terminally ill offenders from [the BOP] facilities to home detention, upon written request from either the [BOP] or an eligible elderly offender or eligible terminally ill offender." Courts have found that the statute does not authorize judicial review.[17] See Bodley v. Andrews, No. 5:19-HC-02052-D, 2019 WL 4196562, at *2-3 (E.D.N.C. May 2, 2019) (slip copy) (holding that because "discretion to release a prisoner to home confinement lies solely with the Attorney General", the court lacked "authority to order [defendant's] release") (citing Xiao v. La Tuna Fed. Corr. Inst., No. EP-CV-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) (dismissing § 2241 petition relying on § 60541); United States v. Curry, No. CR 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act gives the Attorney General the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant the requested relief.") (emphasis in original);

---

[17] The Government argues that the "appropriate judicial remedy" for Crawford exists pursuant to 28 U.S.C. § 2241. (Gov't Resp. at 15.) This Court "expresses no opinion regarding the availability of relief pursuant to civil remedies such as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241." United States v. Overcash, No. 3:15-CR-263-FDW-1, 2019 WL 1472104, at *3 n.2 (W.D.N.C. Apr. 3, 2019) (slip copy).

Burg v. Nicklin, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) (discussing § 60541 and concluding that prisoners have no constitutional or statutory right to home confinement, and the [BOP] may determine whether to assign a prisoner to home confinement)); see also United States v. Overcash, No. 3:15-cr-263-FDW-1, 2019 WL 1472104, *3 (W.D.N.C. Apr. 3, 2019) (slip copy) (explaining that "the Second Chance Act has no provision for judicial review of the BOP's and Attorney General's decision with regards to a request for home detention under § 60541(g)).  Therefore, because the Court lacks jurisdiction over Crawford's Home Detention Motion, his Home Detention Motion is denied.

V.

For the reasons explained in this Memorandum Opinion and Order, IT IS HEREBY ORDERED that Ervin Calvin Crawford's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. #76] is DENIED.  IT IS FURTHER ORDERED that his Motion for Home Detention [Doc. #78] is DENIED.

This the 5th day of December, 2019.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge